BEN SUTER, CASB No. 107680
ben.suter@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
578 Jackson Street
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile:  (415) 981-0136

PHILIP J. MACKEY (Pro Hac Vice Forthcoming)
pmackey@lewisrice.com
MICHAEL L. JENTE (Pro Hac Vice Forthcoming)
mjente@lewisrice.com
LEWIS RICE LLC
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-1343 (telephone)
(314) 612-1343 (facsimile)

Attorneys for Defendant
BUILD-A-BEAR WORKSHOP, INC.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON PEREZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>BUILD-A-BEAR WORKSHOP, INC.,<br><br>        Defendant. | Case No. 3:24-CV-02268-AGS-DEB<br><br>**BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing date & time: August 1, 2025 at 10:00 A.M.<br><br>Hon. Andrew G. Schopler<br><br>Magistrate Judge Daniel E. Butcher |

**PLEASE TAKE NOTICE THAT** on August 1, 2025 at 10:00 A.M., or as soon thereafter as the matter may be heard, in the United States District Court for the Southern District of California, located at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, Courtroom 5C, before the Honorable Andrew G. Schopler, Defendant Build-A-Bear Workshop, Inc. will, and hereby does, move to transfer this action to the United States District Court for the Eastern District of Missouri, and moves in the alternative to dismiss the "Complaint – Class Action" (Dkt. 1) of Plaintiff Cameron Perez, individually and on behalf of all others similarly situated, pursuant to 28 U.S.C. § 1404(a) and Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

This Motion is based on this Notice of Motion and Motion and accompanying Memorandum of Points and Authorities, the Request for Judicial Notice In Support of Build-A-Bear Workshop, Inc.'s Motion to Dismiss and exhibits thereto, the pleadings, records, and papers on file in this action, and other such written and oral arguments as may be presented to the Court.

DATED: March 31, 2025

Ben Suter
**KEESAL, YOUNG & LOGAN**

Philip J. Mackey
    (*pro hac vice forthcoming*)
Michael L. Jente
    (*pro hac vice forthcoming*)
**LEWIS RICE LLC**

*Attorneys for Defendant*

-2-

BEN SUTER, CASB No. 107680
ben.suter@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
578 Jackson Street
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

PHILIP J. MACKEY (Pro Hac Vice Forthcoming)
pmackey@lewisrice.com
MICHAEL L. JENTE (Pro Hac Vice Forthcoming)
mjente@lewisrice.com
LEWIS RICE LLC
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-1343 (telephone)
(314) 612-1343 (facsimile)

Attorneys for Defendant
BUILD-A-BEAR WORKSHOP, INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON PEREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUILD-A-BEAR WORKSHOP, INC.,<br><br>Defendant. | Case No. 3:24-CV-02268-AGS-DEB<br><br>**BUILD-A-BEAR WORKSHOP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing date & time: August 1, 2025 at 10:00 A.M.<br><br>Hon. Andrew G. Schopler<br><br>Magistrate Judge Daniel E. Butcher |

-3-

BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND    Case No. 3:24-CV-02268-AGS-DEB
MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................12

II.   FACTUAL BACKGROUND ................................................................13

    A.    Plaintiff's Purchase ..................................................................13

    B.    Plaintiff's Agreement to BABW's Terms and Conditions .............15

III.  ARGUMENT ......................................................................................16

    A.    Standard of Review..................................................................16

        1.    Motion to Transfer ..............................................................16

        2.    Motion to Dismiss ...............................................................17

    B.    This Action Should Be Transferred to the United States District Court for the Eastern District of Missouri. ....................................17

        1.    Plaintiff Agreed to a Valid Forum Selection Clause............17

        2.    The Forum Selection Clause Is Enforceable. .......................20

        3.    Transfer Is Appropriate Even Without the Forum Selection Clause. ..................................................................21

            i.    The Eastern District of Missouri Has Jurisdiction. 21

            ii.   The Interests of Justice Weigh in Favor of Transfer.......................................................................21

                a.    Plaintiff's Choice of Forum Warrants No Deference..............................................................21

                b.    Missouri Has a Greater Interest in This Action. .................................................................22

                c.    Transfer Serves the Convenience of the Parties and Witnesses. ..........................................23

-4-

C.    Alternatively, Plaintiff's Claims Should Be Dismissed for
      Failure to State a Claim.................................................................23

      1.    Plaintiff Agreed to Missouri Choice of Law. .................23

      2.    Plaintiff's Fraud and Negligent Misrepresentation Claims
            Are Barred By the Economic Loss Doctrine.................25

      3.    Plaintiff's Breach of Contract Claim Should Be
            Dismissed for Failure to Provide Pre-Suit Notice and
            Failure to Identify a Contractual Term That Was
            Breached. .........................................................................26

            i.    Plaintiff Failed to Satisfy the Pre-Suit Notice
                  Requirement.............................................................26

            ii.   Plaintiff Failed to Allege a Specific Contractual
                  Term Was Breached. ...............................................27

      4.    Plaintiff's Unjust Enrichment Claim Should Be
            Dismissed Because Plaintiff Fails to Allege Facts
            Suggesting the Purported Contract At Issue Is Invalid or
            Unenforceable...................................................................28

      5.    Each of Plaintiff's Common Law Claims Should Be
            Dismissed For Failure to Plead Which State Laws
            Govern the Claims ...........................................................29

      6.    Plaintiff's California Statutory Claims Should Be
            Dismissed Because Missouri Law Governs. .................29

      7.    Plaintiff's Damages Claim Under the CLRA Should Be
            Dismissed for Failure to Provide Pre-Suit Notice. .........30

      8.    Plaintiff's Injunctive Relief Claim Under the CLRA
            Should Be Dismissed for Lack of Standing. .................31

-5-

9.     Plaintiff's FAL and UCL Claims, Unjust Enrichment
Claim, and Claim for Equitable Restitution under the
CLRA Should Be Dismissed Because Plaintiff Fails to
Plausibly Allege He Lacks An Adequate Legal Remedy.
.........................................................................................31

10.    Plaintiff's Claims Under the FAL, UCL, and CLRA
Should Be Dismissed Because Plaintiff Failed to Allege
BABW Did Not, In Fact, Offer the Products For Sale At
the Reference Prices During the Relevant Time Period. 33

IV.    CONCLUSION .....................................................................................36

BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND     Case No. 3:24-CV-02268-AGS-DEB
MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Cases**

*Am. GNC Corp. v. GoPro, Inc.*, 2018 WL 6074395 (S.D. Cal. Nov. 6, 2018)....................................................................................17

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ...........................................................................17, 20

*Augustine v. Talking Rain Beverage Co*, 386 F. Supp. 3d 1317 (S.D. Cal. 2019)....................................................................................29

*Axelrod v. Lenovo (U.S.) Inc.*, 2022 WL 976971 (N.D. Cal. Mar. 31, 2022) ...........................................................................31, 32

*B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931 (2022) ............................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................17

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) ...............................................................23, 24

*Coffen v. Home Depot U.S.A., Inc.*, 2016 WL 4719273 (N.D. Cal. Sept. 9, 2016)....................................................................................27

*Crowder v. Shade Store, LLC*, 2024 WL 4868313 (N.D. Cal. 2024) ...........................................................................26, 28

*Dennis v. Ralph Lauren Corp.*, 2016 WL 7387356 (S.D. Cal. Dec. 20, 2016)....................................................................................36

*Dubinsky v. Mermart LLC*, 2009 WL 1011503 (E.D. Mo. Apr. 15, 2009), *aff'd*, 595 F.3d 812 (8th Cir. 2010) ....................................................29

*Elizabeth M. Byrnes, Inc., v. Fountainhead Commer. Capital, LLC*, 2021 WL 3501518 (C.D. Cal. Aug. 6, 2021).......................................31, 32

*Espinoza v. Walmart, Inc.*, 2020 WL 13886119 (S.D. Cal. Apr. 16, 2020) 20

*Evans v. DSW, Inc.*, 2017 WL 7058232 (C.D. Cal. Sept. 14, 2017) ...........27

BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND    Case No. 3:24-CV-02268-AGS-DEB
MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*, 74 F. Supp. 3d 1026 (W.D. Mo. 2015) ...............................................................................26

*Fisher v. Eddie Bauer LLC*, 2019 WL 9467922 (S.D. Cal. Oct. 18, 2019) ...............................................................................................34, 35

*Fisher v. Eddie Bauer LLC*, 2020 WL 4218228 (S.D. Cal. Feb. 3, 2020) ..34

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983 (E.D. Cal. 2012) ...............................................................26

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014).......................30

*Futrell v. Lowe's*, 2022 WL 292961 (E.D. Mo. Feb. 1, 2022) ....................27

*Gandara v. Nestle Purina PetCare Co.*, 2013 WL 2444143 (S.D. Cal. June 4, 2013)..................................................................................22

*Gardiner v. Walmart, Inc.*, 2021 WL 4992539 (N.D. Cal. July 28, 2021)..32

*Grundstrom v. Wilco Life Ins. Co.*, 2022 WL 2390992 (N.D. Cal. July 1, 2022)........................................................................................32

*Hadley v. Kellog Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017)..........33

*Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208 (S.D. Cal. 2013).....22

*Hennessey v. Gap, Inc.*, 86 F.4th 823 (8th Cir. 2023) .................................29

*Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027 (N.D. Cal. 2023) ................................................................................................19

*Jolly v. Purdue Pharma L.P.*, 2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ................................................................................................23

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024)...17, 18

*Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010) ....................................28

*King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856 (N.D. Cal. 2019)........29

*Kohler v. Whaleco, Inc.*, --- F. Supp. 3d ----, 2024 WL 4887538 (S.D. Cal. Nov. 25, 2024)..........................................................................18, 19

*Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023) ..............................................20

-8-

*Lisner v. Sparc Grp.*, 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) ..........35

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ...........................20

*Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842 (N.D. Cal. 2000)...............................................................................................29

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008)..17

*Meza v. Procter & Gamble Co.*, 2023 WL 3267861 (C.D. Cal. Apr. 27, 2023)................................................................................................22, 23

*Mitchell Rubber Prods., LLC v. Verlan Fire Ins. Co.*, 2022 WL 17222233 (C.D. Cal. Aug. 12, 2022) .................................................................17

*Multifamily Captive Grp., LLC v. Assur. Risk Managers, Inc.*, 629 F. Supp. 2d 1135 (E.D. Cal. 2009) ..................................................................25

*Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074 (N.D. Cal. 2022) ......................................................................................................31

*Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459 (1992)..............23, 24

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) ................18

*Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) ........19

*Rikos v. Procter & Gamble Co.*, 2011 WL 1456096 (S.D. Cal. Apr. 13, 2011)...........................................................................................21, 23

*Rochfort v. EF Inst. for Cultural Exch., Inc.*, 2020 WL 12833951 (S.D. Cal. Sept. 8, 2020).....................................................................................20

*Romoff v. Johnson & Johnson Consumer Inc.*, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022)...............................................................................22, 23

*Ruszecki v. Nelson Bach USA Ltd.*, 2015 WL 6750980 (S.D. Cal. June 25, 2015)..............................................................................................30

*Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235 (C.D. Cal. Aug. 14, 2023)..............................................................................................33

*Schumacher v. Amazon.com*, 2012 WL 13036856 (C.D. Cal. May 29, 2012) ...................................................................................24

*Seegert v. Luxottica Retail N. Am., Inc.*, 2018 WL 1214888 (S.D. Cal. Feb. 23, 2018)..............................................................36

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929 (S.D. Cal. 2021)............................................................25

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ..............32

*Sperling v. DSWC, Inc.*, 699 F. App'x 654 (9th Cir. 2017)........................36

*Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018)............................................................20, 21

*Troia v. Tinder, Inc.*, 2020 WL 619855 (E.D. Mo. Feb. 10, 2020) .............18

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011).......................................................34

*Vizcarra v. Michael's Stores, Inc.*, 710 F. Supp. 3d 718 (N.D. Cal. 2024).28

*Wash. Mut. Bank., FA v. Superior Court*, 24 Cal. 4th 906 (2001) ..............24

*Washington v. Cashforiphones.com*, 2016 WL 6804429 (S.D. Cal. June 1, 2016)...................................................................20

*Williams v. Tesla, Inc.*, 2021 WL 2531177 (N.D. Cal. June 21, 2021).......32

*Wing v. Airstream, Inc.*, 2024 WL 5006249 (C.D. Cal. Sept. 19, 2024).....21

**Statutes**

28 U.S.C. § 105(a)(1) ...............................................................21

28 U.S.C. § 1404(a)..................................................................17

Cal Civ. Code §§ 1750 ..............................................................14

Cal. Bus. & Prof. Code § 17200 .............................................14, 33

Cal. Bus. & Prof. Code § 17500 .............................................14, 34

Cal. Bus. & Prof. Code § 17501 .........................................14, 33, 34

Cal. Civ. Code § 1770(a)(13).....................................................33

-10-

Cal. Civ. Code § 1770(a)(5) ....................................................................33

Cal. Civ. Code § 1770(a)(9) ....................................................................33

Cal. Civ. Code § 1782(a)(1) ....................................................................30

Cal. Com. Code § 2607(3)(A) .................................................................27

Mo. Rev. Stat. § 407.020.1 .....................................................................30

Mo. Rev. Stat. § 407.025.1 .....................................................................30

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................34

BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND    Case No. 3:24-CV-02268-AGS-DEB
MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## I.   <u>INTRODUCTION</u>

Plaintiff Cameron Perez ("Plaintiff") alleges that Defendant Build-A-Bear Workshop, Inc. ("BABW") defrauded him and others by selling products for a stated price. Specifically, he alleges that BABW includes "reference prices" in certain advertisements of on-sale products, which he contends is unlawful because the products are allegedly "rarely, if ever" offered for sale at the reference price. Plaintiff contends that he and others were tricked into purchasing products they otherwise would not have and paid a "premium price" (*i.e.*, the lower price, which is somehow a "premium price") in doing so.

Plaintiff's contentions are without merit. However, this action should be transferred to the United States District Court for the Eastern District of Missouri, where Plaintiff agreed to litigate his claims. Transfer is also appropriate because the only connection between this putative nationwide class action and this forum is Plaintiff's alleged single online purchase, while all of the alleged conduct at issue would have instead occurred within the Eastern District of Missouri.

That said, should this Court decline transfer, it should nonetheless dismiss. Plaintiff fails to state a claim either under Missouri law, under which he agreed to litigate his claims, or under California law. Plaintiff's fraud and negligent misrepresentation claims should be dismissed because they are barred by the economic loss doctrine. His breach of contract claim should be dismissed because he failed to satisfy the statutory pre-suit notice requirement, and because he does not identify any purported contractual term that was breached. Plaintiff's unjust enrichment claim should be dismissed because Plaintiff cannot assert a breach of contract claim and an unjust enrichment claim without alleging facts suggesting the purported contract is invalid or unenforceable.

Plaintiff's California statutory claims should likewise be dismissed. Dispositive of them all, Missouri law applies to Plaintiff's claims. Beyond that,

-12-

1  Plaintiff's CLRA claim for damages should be dismissed because Plaintiff failed

2  to satisfy the CLRA's pre-suit notice requirement. Plaintiff's FAL and UCL

3  claims, his equitable claim under the CLRA, and his unjust enrichment claim

4  should be dismissed because Plaintiff does not and cannot allege that he lacks an

5  adequate remedy at law. Finally, Plaintiff's claims under the CLRA, FAL, and

6  UCL should be dismissed as Plaintiff failed to satisfy Rule 9(b) with respect to his

7  pre-suit investigation because Plaintiff failed to allege that BABW did not, in fact,

8  offer the products at issue for sale at the reference price during the relevant period.

9     This action should be transferred to the Eastern District of Missouri or,

10  alternatively, dismissed with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Purchase

13     Plaintiff alleges that in June 2024, while on BABW's website, he viewed a

14  three-piece Los Angeles Kings uniform that displayed a "reference price of $18,"

15  and a sale price of $13.50, allegedly depicted as follows:



(Dkt. 1, ¶¶ 46-48.) Plaintiff alleges that "[a]fter seeing the reference price of $18,"

25  he purchased the product for the sale price of $13.50 "because [he] believed he

26  was receiving a significant discount on the product." (*Id.*, ¶¶ 48-49 & Ex. B

-13-

1   thereto.) After completing his purchase for the stated price of $13.50, Plaintiff

2   received the Los Angeles Kings uniform he ordered. (*Id*., ¶ 15.)

3       Plaintiff contends that he was "intentionally deceived" because the Los

4   Angeles Kings outfit is "rarely, if ever, offered . . . at the 'regular' reference

5   price[]," and was not offered for sale by BABW at the reference price "at any time

6   in the 90 days" prior to his purchase. (*Id*., ¶ 50.) Plaintiff concludes that the "actual

7   value" of the Los Angeles Kings uniform he purchased "did not match the inflated

8   reference price Plaintiff was led to believe was the true value of the uniform." (*Id*.)

9       From the foregoing, Plaintiff asserts claims on behalf of himself and a

10  putative nationwide class and "California subclass" consisting of individuals who,

11  within the limitations period, purchased at least one product from BABW's

12  website that was advertised as discounted using a reference price at which the

13  product was not offered for sale during the 90-day period preceding the purchase.

14  (*Id*., ¶58.) Plaintiff asserts eight claims against BABW based on the advertisement

15  of the Los Angeles Kings uniform and more than a dozen other products with

16  allegedly similar advertisements. (*Id*., ¶¶ 5-6, 39, 41-42, 73-179.)

17      Plaintiff asserts the following claims: (1) common law fraud; (2) negligent

18  misrepresentation; (3) breach of contract; (4) unjust enrichment; (5) violations of

19  the California Consumer Legal Remedies Act, Cal Civ. Code §§ 1750, *et seq.*

20  (CLRA); (6) violations of Section 17501, *et seq.*, of California's False Advertising

21  Law (Section 17501); (7) violations of Section 17500 , *et seq.*, of California's

22  False Advertising Law (Section 17500)[1]; and (8) violations of the California

23  Unfair Competition Law, Bus. Prof. Code §§ 17200, *et seq.* (UCL) . (Dkt. 1, ¶¶

24  73-179.)

25

26      [1] As appropriate, Plaintiff's Section 17501 and Section 17500 claims are
    referred to as Plaintiff's "FAL" claims.

27

28

-14-

1

### B.    Plaintiff's Agreement to BABW's Terms and Conditions

2

As alleged by Plaintiff, he made his purchase online via BABW's website

3

on June 11, 2024. (Dkt. 1, ¶¶ 46-49 & Ex. B thereto.) When a user first connects

4

to BABW's website, a pop-up banner immediately displays:

5



12

13    (*See* Declaration of Arthur Huggard, ¶ 6.) Among other things, the pop-up states:

14    "By agreeing to the use of cookies on our website, you . . . ***agree to the*** terms of

15    the Privacy Policy and ***Terms of use***[.]" (*Id.* (emphases added).) A user must

16    navigate this pop-up banner by clicking "Accept" and thereby agreeing to the

17    Terms of Use, or by clicking outside the pop-up banner and thereby accepting the

18    terms of the pop-up banner and thus the Terms of Use, before proceeding to the

19    rest of the website. (*Id.*, ¶ 7.) A link to BABW's Terms of Use is provided to users

20    on the bottom of the page, as depicted below:

21



28

-15-

(*Id*., ¶ 9.) If a user scrolls his or her computer mouse over the phrase "Terms of Use," which appears in standard, white font set against a blue background, a hyperlink appears:



(*Id*., ¶ 10.) If a user clicks on that link, the visitor is taken directly to BABW's Terms of Use, which states in standard-sized font under a bold, large font "Governing Law and Jurisdiction" header:

**Governing Law and Jurisdiction**

Build-A-Bear operates the Website within the United States of America, and this Policy is governed by the laws of the United States of America and the State of Missouri, without giving effect to the conflict of law provisions thereof and expressly excluding any application of the United Nations Convention on Contracts for the International Sale of Goods. You agree that, except as expressly set forth in our Privacy Policy, any legal action arising from or relating in any way to the Website will be brought exclusively in the Federal or State courts located in St. Louis County, Missouri, and you irrevocably agree to submit to the jurisdiction of such courts.

(*Id*., ¶ 11.) BABW's website required users to accept or otherwise navigate the pop-up as of June 11, 2024. (*Id*., ¶ 13.) The hyperlink to the Terms of Use was available as of June 11, 2024. (*Id*., ¶ 14.) And the Governing Law and Jurisdiction provision above was included within the Terms of Use as of June 11, 2024, and has not changed since then. (*Id*., ¶ 12.)

## III.   ARGUMENT

### A.   Standard of Review

#### 1.   Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought[.]" 28 U.S.C. § 1404(a). Where the parties have agreed to a forum selection clause, a "district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). Otherwise, in resolving a motion to transfer under § 1404(a), courts "employ a two-step framework." *Am. GNC Corp. v. GoPro, Inc.*, 2018 WL 6074395, at *13 (S.D. Cal. Nov. 6, 2018). First, the court considers "whether the plaintiff could have originally brought the action in the proposed transferee forum." *Id*. If so, "then the court considers the propriety of transfer" by considering the Section 1404(a) factors. *Id*.

## 2. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in a complaint." *Mitchell Rubber Prods., LLC v. Verlan Fire Ins. Co.*, 2022 WL 17222233, at *1 (C.D. Cal. Aug. 12, 2022). Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must set forth sufficient factual allegations "to raise a right to relief above the speculative level." *Id*.

## B. This Action Should Be Transferred to the United States District Court for the Eastern District of Missouri.

### 1. Plaintiff Agreed to a Valid Forum Selection Clause.

Under California law, "internet contracts are classified by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Keebaugh v. Warner*

-17-

*Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (internal quotations and citation omitted). As relevant here, a sign-in wrap agreement occurs where a user must advance through a screen stating, for instance, "By tapping 'Play,' I agree to the Terms of Service." *Id.* at 1014. Put differently, sign-in wrap agreements "are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 945 (2022); *see also Kohler v. Whaleco, Inc.*, --- F. Supp. 3d ----, 2024 WL 4887538, at *5 (S.D. Cal. Nov. 25, 2024) ("Here, because Temu requires individuals to press 'Continue' before they can purchase goods on Temu's Website, but does not require users to review Temu's Terms and confirm their assent before gaining access, the agreement is a sign-in wrap agreement.").[2] A sign-in wrap agreement is enforceable where: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh*, 100 F.4th at 1014.

---

[2] The Court "need not engage in [the] circular inquiry" of what law governs the formation of the internet agreement because California and Missouri law are the same. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *see Troia v. Tinder, Inc.*, 2020 WL 619855, at *3 (E.D. Mo. Feb. 10, 2020) ("Troia was provided access to the TOU and accepted those terms, even if those terms were not presented on the same page as the acceptance button. Here, directly above the link that Troia clicked to create his account is this disclosure: 'By creating an account or logging in, you agree to our Terms and Privacy Policy[,]'" which "[were] hyperlinked.").

BABW's pop-up process satisfies this standard. First, BABW provides conspicuous notice that a user is agreeing to be bound by the Terms of Use by proceeding through the banner. The banner states that by agreeing to the "use of cookies on our website, you . . . agree to the Terms of the Privacy Policy and Terms of use[.]" (Huggard Decl., ¶ 6.) Those Terms of Use are easily accessible to them via hyperlink (which is immediately displayed upon a user scrolling over the phrase, "Terms of Use") at the bottom of the webpage that is in standard font, with contrasting colors. (*Id.*, ¶ 10.) Second, a user **must** navigate this pop-up by clicking "Accept," or by clicking outside the pop-up and thereby accepting, before proceeding to the rest of the website. (*Id.*, ¶ 13.) Plaintiff could not have made his alleged online purchase without first agreeing to the Terms of Use. (*Id.*, ¶ 8.)

Courts have routinely found similar sign-in wrap agreements enforceable. *See Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582, 586-87 (N.D. Cal. 2020) (sign-in wrap agreement enforceable where plaintiffs had to click "Sign Up" to complete the registration process and place an order, and directly below that button was the statement: "By tapping Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement," and the Terms and Conditions appeared via hyperlink); *Kohler*, 2024 WL 4887538, at *6 ("Plaintiff unambiguously assented to Temu's Terms by pressing the 'Continue' button multiple times . . ."); *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1038 (N.D. Cal. 2023) (agreement enforceable where upon visiting the website, plaintiff was prompted to enter her phone number, confirm a verification code, and click continue, and just below the continue button was a statement that "[b]y clicking continue you agree to . . . the Jerry Terms of Use and Privacy Policy[,]" which were hyperlinked). Accordingly, Plaintiff agreed to be bound by the Terms of Use, including its choice of law and venue provisions.

-19-

## 2.    The Forum Selection Clause Is Enforceable.

The forum selection clause "represents the parties' agreement as to the most proper forum." *Atl. Marine*, 571 U.S. at 63. Because Plaintiff agreed to the forum selection clause, his choice of forum "merits no weight." *Id*. Instead, he has the burden to show "transfer to the forum for which the parties bargained is unwarranted." *Id*. To overcome enforcement of the forum selection clause, he must demonstrate "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." *Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) (quoting *Atl. Marine*, 571 U.S. at 52). Extraordinary circumstances exist only if: "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought . . .' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of his day in court.'" *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)).

No extraordinary circumstances exist here. The Terms of Use were not procured by fraud or overreaching. Indeed, Plaintiff would have to show "the forum selection clause itself, as opposed to the entire contract in which the clause is set forth, is the product of fraud or overreaching." *Washington v. Cashforiphones.com*, 2016 WL 6804429, at *5 (S.D. Cal. June 1, 2016). He cannot do so. And transfer would not contravene California public policy, as reflected by the many instances of similar actions being transferred. *See, e.g., Id.* at *7 (transferring class action asserting CLRA, FAL, and common law fraud and contract claims); *Rochfort v. EF Inst. for Cultural Exch., Inc.*, 2020 WL 12833951, at *8-9 (S.D. Cal. Sept. 8, 2020) (transferring UCL and CLRA claims); *Espinoza v. Walmart, Inc.*, 2020 WL 13886119, at *10 (S.D. Cal. Apr. 16, 2020) (rejecting argument that public policy prevented transfer of CLRA and UCL claims). Lastly,

-20-

Plaintiff cannot carry his "heavy burden" to show he would be denied his day in court in the chosen forum. There is no reason the Eastern District of Missouri would not provide "a basically fair court system" such that Plaintiff would be allowed to "seek some relief." *Sun*, 901 F.3d at 1093.

Accordingly, this matter should be transferred to the Eastern District of Missouri, where the parties agreed to litigate disputes such as this action.

### 3. Transfer Is Appropriate Even Without the Forum Selection Clause.

Independently, transfer is also justified under the Section 1404(a) factors.

### i. The Eastern District of Missouri Has Jurisdiction.

Like this Court, the Eastern District of Missouri has subject matter jurisdiction over this matter pursuant to CAFA. (*See* Dkt. 1, ¶ 11.) Further, BABW has its principal place of business located in St. Louis, Missouri. (*Id.*, ¶ 10.)[3] The Eastern District of Missouri thus has personal jurisdiction over BABW, and venue is proper there under 28 U.S.C. § 1391(a). *See, e.g.*, *Wing v. Airstream, Inc.*, 2024 WL 5006249, at *2 (C.D. Cal. Sept. 19, 2024). Accordingly, Plaintiff could have brought this action in the Eastern District of Missouri.

### ii. The Interests of Justice Weigh in Favor of Transfer.

### a. Plaintiff's Choice of Forum Warrants No Deference.

"Plaintiff's choice of venue is only entitled to minimal consideration when . . . the operative facts happened outside the forum, or plaintiff is seeking to bring a class action." *Rikos v. Procter & Gamble Co.*, 2011 WL 1456096, at *2 (S.D. Cal. Apr. 13, 2011). Here, "[a]ny deference that Plaintiff is given for [his] choice

---

[3] St. Louis, Missouri, is located within the Eastern District of Missouri, Eastern Division. *See* 28 U.S.C. § 105(a)(1).

1   of forum is substantially depleted since [he] brought [his] suit on behalf of a

2   putative class." *Gandara v. Nestle Purina PetCare Co.*, 2013 WL 2444143, at \*4

3   (S.D. Cal. June 4, 2013). Although Plaintiff was allegedly located within this

4   District when he made his online purchase, all of the "other facts . . . at the crux of

5   Plaintiff's claims" occurred outside of the forum, at BABW's corporate office in

6   St. Louis, Missouri. *Romoff v. Johnson & Johnson Consumer Inc.*, 2022 WL

7   3905301, at \*3 (S.D. Cal. Aug. 26, 2022); (Huggard Decl., ¶¶ 2-4). Any "alleged

8   false and misleading statements originated" there, not in this District. *Romoff*,

9   2022 WL 3905301, at \*3. Accordingly, "Plaintiff's choice of forum is entitled to

10  very little weight." *Id.*; *see also Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d

11  1208, 1215 (S.D. Cal. 2013) (agreeing with defendant that "in a false advertising

12  action, the heart of the matter lies where the marketing and manufacturing

13  decisions were made, which is typically at Defendant's headquarters").

14                  **b. Missouri Has a Greater Interest in This Action.**

15          As stated, in a false advertising action, the "heart of the matter" is "where

16  the marketing . . . decisions were made"—here, BABW's headquarters in

17  St. Louis, Missouri. *Id.*; (Huggard Decl., ¶¶ 2-4). "There is nothing about

18  [Plaintiff's] experience that is unique to this District, and the nationwide class on

19  whose behalf [he] files suit purportedly suffered the exact same harm in seemingly

20  every single district across the nation." *Meza v. Procter & Gamble Co.*, 2023 WL

21  3267861, at \*7 (C.D. Cal. Apr. 27, 2023). There are thus "few meaningful case-

22  specific contacts to this District and stronger ties to [Missouri]," where BABW is

23  headquartered. *Id.* at \*8.

24          Further, California does not have a strong local interest in this action.

25  "California's interest in applying its law to residents of foreign states is attenuated

26  at best, and each state has a strong interest in applying its own laws." *Romoff*, 2022

27

28

BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND      Case No. 3:24-CV-02268-AGS-DEB
MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

WL 3905301, at *6. The relative strength of contacts with each forum and the lack of a predominating California interest in the controversy support transfer.

### c. Transfer Serves the Convenience of the Parties and Witnesses.

While Plaintiff resides within this District, "[g]iven that Plaintiff has alleged a class action, it is unlikely that Plaintiff [himself] would be significantly inconvenienced by transfer." *Jolly v. Purdue Pharma L.P.*, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005); *see also Meza*, 2023 WL 3267861, at *11. In contrast, "[n]one of Defendant's employees, records, or operations related to [the advertising practices at issue] are located in California," rendering this District an inherently less convenient forum than the Eastern District of Missouri for BABW. *Romoff*, 2022 WL 3905301, at *3. Further, Plaintiff has not named any witnesses, other than himself, who reside in this District. BABW's relevant personnel are located primarily in St. Louis, Missouri. (Huggard Decl., ¶ 3.) Requiring these witnesses to attend proceedings in this District "adds a significant expense for Defendant and is another factor favoring transfer." *Rikos*, 2011 WL 1456096, at *2. Accordingly, the convenience of witnesses weighs in favor of transfer.

### C. Alternatively, Plaintiff's Claims Should Be Dismissed for Failure to State a Claim.

#### 1. Plaintiff Agreed to Missouri Choice of Law.

As discussed above, Plaintiff agreed to BABW's Terms of Use, which states it is governed by Missouri law. (*See supra*, at II-B.) A "federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). California has a "strong public policy favoring enforcement of [choice of law] provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992).

-23-

California courts apply a three-step process to analyze choice of law provisions, beginning with "whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law." *Id*. at 466. If either test is met, the court next determines "whether the chosen state's law is contrary to a *fundamental* policy of California." *Id*. If a conflict exists, a court must determine whether "California has a materially greater interest in the chosen state in the determination of the particular issue." *Id*. A court will only apply California law notwithstanding a choice of law clause "[i]f California possesses the materially greater interest." *Bridge Fund Capital Corp.*, 622 F.3d at 1003. The party seeking to enforce the choice of law provision has the burden of proving there is a substantial relationship or other reasonable basis for the parties' choice of law in the first instance. *Wash. Mut. Bank., FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001). Once the defendant has met this burden, the provision "generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Id*.

Here, BABW's principal place of business is in Missouri, so it has a "substantial relationship" to the state. *See Nedlloyd Lines*, 3 Cal. 4th at 467. Plaintiff thus must show that applying Missouri law violates some fundamental public policy *and* that California has a materially greater interest in class claims related to a Missouri company—a heavy lift in this nationwide putative class action. *Schumacher v. Amazon.com*, 2012 WL 13036856, at *5 (C.D. Cal. May 29, 2012) ("California has no interest in applying its law to residents of other states who purchased and used [products] in those other states."). Ultimately, Plaintiff's claims should be dismissed under both Missouri and California law.

1

## 2.     Plaintiff's Fraud and Negligent Misrepresentation Claims Are Barred By the Economic Loss Doctrine.

2

3       The economic loss doctrine bars tort claims where there is a contract

4  between the parties, the alleged "misrepresentations at the center of plaintiffs'

5  claim is the contract itself," and the damages sought are "the same economic losses

6  arising from the alleged breach of contract." *Multifamily Captive Grp., LLC v.*

7  *Assur. Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009). In other

8  words, the doctrine "prohibits recovery of such purely economic losses where the

9  alleged tort claim merely restates contractual obligations." *Soil Retention Prods.,*

10 *Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 954 (S.D. Cal. 2021).

11      Plaintiff's fraud and negligent misrepresentation claims are effectively

12 identical. Plaintiff alleges that BABW misrepresented that "the reference prices

13 advertised on the website were not truly former prices and that the 'discount' price

14 advertised was not truly a discount." (Dkt. 1, ¶¶ 75, 81, 86-87, 95.) Both counts

15 allege that as a result, Plaintiff and the putative class members were monetarily

16 damaged because they either would not have purchased the products or because

17 they overpaid for the products. (*Id.*, ¶¶ 81, 94.) Similarly, Plaintiff's breach of

18 contract claim alleges that BABW breached the purported contract by failing to

19 provide products "that had a market value equal to the reference price" and by

20 "failing to provide the promised discount." (*Id.*, ¶ 102.)

21      Plaintiff's fraud and negligent misrepresentation claims are based on

22 alleged misrepresentations that Plaintiff also alleges were contractual obligations

23 of BABW. Plaintiff contends BABW intentionally and negligently misrepresented

24 the amount of the discount offered on the products based on the price at which the

25 products were offered for sale as compared to the former (reference) prices. This

26 is the same as Plaintiff's breach of contract claim, the basis of which is that BABW

27 agreed to sell the products with a "market value" equal to that listed on the

28

-25-

reference prices. Plaintiff alleges he and the putative class were damaged in the same manner with respect to all three claims: the difference between what they paid and the market value or prevailing market price of the products. (*Id.*, ¶¶ 81, 94, 103 (seeking "benefit of the bargain" damages while claiming the "bargain" they sought was a "market value" equal to the reference price).)

Thus, Plaintiff's fraud and negligent misrepresentation claims are barred by the economic loss doctrine. *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 993-95 (E.D. Cal. 2012) (dismissing fraud and negligent misrepresentation claims on grounds they were barred by the economic loss doctrine where "the misrepresentation that forms the basis of the fraud claim is the contract itself"); *Crowder v. Shade Store, LLC*, 2024 WL 4868313, at *8 (N.D. Cal. 2024) (where plaintiffs alleged defendant's advertisements and price quotes created an illusion customers were receiving a limited-time discount despite the discount being perpetual, dismissing negligent misrepresentation claim on grounds it was barred by the economic loss doctrine); *Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*, 74 F. Supp. 3d 1026, 1029 (W.D. Mo. 2015) (dismissing misrepresentation claim on grounds it was barred by the economic loss doctrine because claim was founded on the same allegations as plaintiff's breach of contract claim). These claims should thus be dismissed.

### 3. Plaintiff's Breach of Contract Claim Should Be Dismissed for Failure to Provide Pre-Suit Notice and Failure to Identify a Contractual Term That Was Breached.

#### i. *Plaintiff Failed to Satisfy the Pre-Suit Notice Requirement.*

Before bringing his breach of contract claim, Plaintiff was required to satisfy California's pre-suit notice requirement: "Where a tender has been accepted . . . The buyer must, within a reasonable time after he or she discovers or

-26-

1    should have discovered any breach, notify the seller of breach or be barred from

2    any remedy[.]" Cal. Com. Code § 2607(3)(A). This provision applies to contract

3    claims arising out of the sale of goods. *Evans v. DSW, Inc.*, 2017 WL 7058232, at

4    *4 (C.D. Cal. Sept. 14, 2017). Plaintiff does not and cannot allege that he sent

5    BABW pre-suit notice notifying BABW that it was in breach of a contractual

6    obligation. Plaintiff only alleges that his pre-suit notice notified BABW of alleged

7    *CLRA* violations. (Dkt. 1, ¶ 137.) No similar allegation is made with respect to his

8    breach of contract claim. Accordingly, it must be dismissed. *See Evans*, 2017 WL

9    7058232, at *4-5 (dismissing breach of contract claims based on allegedly

10    deceptive advertising practices because plaintiff failed to provide pre-suit notice;

11    explaining that Plaintiff's pre-suit CLRA notice was insufficient because "absent

12    from the CLRA letter are any facts, claims, or representations signaling Plaintiff's

13    intent to bring breach of warranty or breach of contract claims").

14         ii.    ***Plaintiff Failed to Allege a Specific Contractual Term***

15                ***Was Breached.***

16    Plaintiff's breach of contract claim should be dismissed for the additional

17    reason that Plaintiff failed to allege that a specific contractual term was breached.

18    To adequately allege a breach of contract, a plaintiff must identify, among other

19    things, "what specific terms of the contract were breached." *Coffen v. Home Depot*

20    *U.S.A., Inc.*, 2016 WL 4719273, at *5 (N.D. Cal. Sept. 9, 2016); *see also Futrell*

21    *v. Lowe's*, 2022 WL 292961, at *2 (E.D. Mo. Feb. 1, 2022) (dismissing contract

22    claim where plaintiff "fail[ed] to specify which obligations Defendant breached").

23    Plaintiff's claim is that BABW breached the parties' contract by failing to

24    sell the product at "a market value equal to the reference price displayed on the

25    website, and by failing to provide the promised discount." (Dkt. 1, ¶ 102.) But

26    nowhere does Plaintiff allege that BABW made any promise to sell the products

27    at "market value." Rather, Plaintiff merely alleges that BABW included a

28

-27-

1    reference price on its website, stated that Plaintiff and the putative class could

2    purchase the products at a price discounted from the reference price, and Plaintiff

3    and the putative class purchased the products at the discounted price. There is no

4    breach of contract—no term was breached. *See Kim v. Carter's Inc.*, 598 F.3d 362,

5    364 (7th Cir. 2010) ("By charging this agreed price in exchange for ownership of

6    the clothing, Carter's gave the plaintiffs the benefit of their bargain."). As such,

7    Plaintiff's breach of contract claim should be dismissed.

8            **4.**       **Plaintiff's Unjust Enrichment Claim Should Be Dismissed**

9                    **Because Plaintiff Fails to Allege Facts Suggesting the**

10                    **Purported Contract At Issue Is Invalid or Unenforceable.**

11        A plaintiff "may not plead the existence of an enforceable contract and

12    simultaneously maintain a quasi-contract claim unless the plaintiff also pleads

13    facts suggesting that the contract may be unenforceable or invalid." *Crowder*, 2024

14    WL 4868313, at *9. Here, Plaintiff alleges that he and the putative class conferred

15    a benefit on BABW by purchasing the products at their respective discounted

16    prices, which Plaintiff contends was actually a "premium" (which Plaintiff does

17    not explain), and BABW unjustly retained that price premium to Plaintiff's and

18    the putative class's detriment. (Dkt. 1, ¶¶ 107-09.) Nowhere does Plaintiff allege

19    that the contract—which forms the basis of his mimic breach of contract claim—

20    is invalid or unenforceable. Accordingly, Plaintiff's unjust enrichment claim

21    should be dismissed. *See Crowder*, 2024 WL 4868313, at *9 (dismissing unjust

22    enrichment claim in discount misrepresentation case because plaintiffs failed to

23    allege "that their contracts with Defendant are unenforceable or invalid" and did

24    not "explain how the use of *price discounts* resulted in payment of a price *premium*

25    to Defendant") (emphases in original) (internal quotations and citation omitted);

26    *Vizcarra v. Michael's Stores, Inc.*, 710 F. Supp. 3d 718, 732 (N.D. Cal. 2024)

27    (dismissing unjust enrichment claim in discount misrepresentation case where

28     

1    plaintiff failed to allege the contract was invalid or unenforceable and failed to

2    explain how the use of a price discount resulted in her paying a price premium);

3    *Dubinsky v. Mermart LLC*, 2009 WL 1011503, at *5-6 (E.D. Mo. Apr. 15, 2009)

4    (dismissing unjust enrichment claim where plaintiffs failed "to allege that they

5    conferred any benefit upon defendant apart from those benefits governed

6    exclusively by the contracts"), *aff'd*, 595 F.3d 812 (8th Cir. 2010).

7        Further, under Missouri law, Plaintiff's unjust enrichment claim should be

8    dismissed because he has not identified a loss from purchasing the product at the

9    advertised price. *See Hennessey v. Gap, Inc.*, 86 F.4th 823, 830-31 (8th Cir. 2023).

10       **5.    Each of Plaintiff's Common Law Claims Should Be**

11              **Dismissed For Failure to Plead Which State Laws Govern**

12              **the Claims**

13       In addition to the foregoing, each of Plaintiff's common law claims should

14   be dismissed based on Plaintiff's "failure to identify which state laws govern [his]

15   common law claims," meaning that "the claims brought on behalf of the

16   nationwide class have not been adequately pled." *See, e.g.*, *Augustine v. Talking*

17   *Rain Beverage Co*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) (collecting cases).

18       **6.    Plaintiff's California Statutory Claims Should Be**

19              **Dismissed Because Missouri Law Governs.**

20       Because Plaintiff agreed to Missouri law, Plaintiff cannot allege California

21   statutory claims unless the claims represent a fundamental policy of California.

22   *See King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 866-67 (N.D. Cal. 2019).

23   To avoid this result, Plaintiff would have to show that applying Missouri law

24   would substantially diminish the rights of California residents and violate the

25   state's public policy. *See Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d

26   842, 862 (N.D. Cal. 2000) ("The mere fact that the chosen law provides greater or

27   lesser protection than California law, or that in a particular application the chosen

28

-29-

1    law would not provide protection while California law would, are not reasons for

2    applying California law."). He cannot do so.

3        Like California, Missouri has consumer protection laws prohibiting false

4    advertising. *See* Mo. Rev. Stat. § 407.020.1. Missouri law provides for damages,

5    attorneys' fees, punitive damages, and equitable relief. Mo. Rev. Stat. § 407.025.1.

6    Thus, because Plaintiff cannot meet his burdens each of his California statutory

7    claims should be dismissed.

8          **7.**    **Plaintiff's Damages Claim Under the CLRA Should Be**

9                    **Dismissed for Failure to Provide Pre-Suit Notice.**

10        At least 30 days before filing a lawsuit seeking damages under the CLRA,

11    a plaintiff must "[n]otify the [defendant] of the *particular* alleged violations" of

12    the CLRA. Cal. Civ. Code § 1782(a)(1) (emphasis added). This means "that a

13    plaintiff must provide notice regarding each particular product on which his CLRA

14    damages clai[m] [is] based, even where the products qualify as substantially

15    similar." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1016 (N.D. Cal. 2014).

16        In Plaintiff's pre-suit notice letter, he did not identify a single product he

17    believed had been unlawfully advertised. (*See* Ex. 1 to Request for Judicial

18    Notice.) Rather, he merely stated that he purchased an "outfit" and alleged that

19    BABW had engaged in deceptive practices with respect to "goods" it sold. (*See*

20    *id*.) Yet, his Complaint takes issue with eighteen specific products, none of which

21    was mentioned in his pre-suit notice. (Dkt. 1, ¶¶ 5, 39, 41.) Plaintiff's pre-suit

22    notice fails to satisfy the rigid pre-suit notice requirements under the CLRA. *See*

23    *Frenzel*, 76 F. Supp. at 1016-17; *Ruszecki v. Nelson Bach USA Ltd.*, 2015 WL

24    6750980, at *6 (S.D. Cal. June 25, 2015). Accordingly, to the extent Plaintiff seeks

25    damages under the CLRA, this claim should be dismissed.

26

27

28

### 8. Plaintiff's Injunctive Relief Claim Under the CLRA Should Be Dismissed for Lack of Standing.

As to the balance of Plaintiff's CLRA claim—seeking injunctive relief—this, too, should be dismissed because Plaintiff does not and cannot show any risk of future injury for which injunctive relief is necessary.[4] For one, he does not allege any "threatened injury" that is "certainly impeding." *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1079 (N.D. Cal. 2022) (citation omitted). His bare allegation of "continu[ing] to be interested in purchasing products that are sold by [BABW]," (Dkt. 1, ¶ 55), is a plainly inadequate "allegation[] of possible future injury," which is "not sufficient." *Nacarino*, 642 F. Supp. 3d at 1079. Further, "going forward," Plaintiff is able to "evaluate product claims and make appropriate purchasing decisions" as to whether or not to purchase products from BABW for the prices at which they are offered for sale and, as such, "injunctive relief would serve no meaningful purpose." *Id.* at 1080. To the extent the CLRA claim seeks injunctive relief, it should be dismissed.

### 9. Plaintiff's FAL and UCL Claims, Unjust Enrichment Claim, and Claim for Equitable Restitution under the CLRA Should Be Dismissed Because Plaintiff Fails to Plausibly Allege He Lacks An Adequate Legal Remedy.

In Counts VI through VIII, Plaintiff asserts violations of the FAL and UCL. (*See* Dkt. 1, ¶¶ 139-79.) "It is well-established that claims for relief under the FAL and UCL are limited to restitution and injunctive relief." *Axelrod v. Lenovo (U.S.) Inc.*, 2022 WL 976971, at *2 (N.D. Cal. Mar. 31, 2022); *see also Elizabeth M.*

---

[4] As to this aspect of Plaintiff's CLRA claim, BABW's Motion to Dismiss is brought under Rule 12(b)(1) in that Plaintiff lacks standing to sue.

1   *Byrnes, Inc.*, *v. Fountainhead Commer. Capital, LLC*, 2021 WL 3501518, at *3

2   (C.D. Cal. Aug. 6, 2021) ("Claims under both the UCL and FAL are equitable in

3   nature."). Plaintiff cannot pursue equitable claims unless he (at a minimum)

4   plausibly alleges he and the putative class lack an adequate remedy at law. *See*

5   *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

6       Courts have repeatedly confirmed that claims under the UCL and FAL,

7   equitable claims under the CLRA, and unjust enrichment claims, are unavailable

8   where a plaintiff fails to adequately allege he or she lacks an adequate remedy at

9   law. *See, e.g.*, *id.* (affirming dismissal of plaintiff's equitable restitution claims

10  under the UCL and CLRA because plaintiff failed to allege she lacked an adequate

11  legal remedy); *Axelrod*, 2022 WL 976971, at *2-3 (UCL and FAL claims);

12  *Elizabeth M. Byrnes, Inc.*, 2021 WL 3501518, at *3 (same); *Williams v. Tesla,*

13  *Inc.*, 2021 WL 2531177, at *7-8 (N.D. Cal. June 21, 2021) (equitable relief under

14  the CLRA, UCL, and FAL); *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *7

15  (N.D. Cal. July 28, 2021) (unjust enrichment and UCL claims).

16      Plaintiff does not allege that he or the putative class lack an adequate remedy

17  at law. Instead, he repeatedly alleges the existence of an adequate legal remedy.

18  (*See* Dkt. 1, *e.g.*, ¶¶ 8 (plaintiff "is seeking . . . damages"); 54 ("Plaintiff was

19  damaged"); 67; 103; 133; 138; PRAYER FOR RELIEF, sub. D.) And it does not

20  matter that Plaintiff failed to satisfy the CLRA's pre-suit notice requirement with

21  respect to the products at issue or that his breach of contract claim fails—the

22  dispositive point is that Plaintiff has not plausibly alleged he and the putative class

23  lack an adequate remedy at law. *See Grundstrom v. Wilco Life Ins. Co.*, 2022 WL

24  2390992, at *2 (N.D. Cal. July 1, 2022). Accordingly, Plaintiff's unjust

25  enrichment, UCL, and FAL claims should be dismissed insofar as they seek

26  equitable restitution, and Plaintiff's CLRA claim for equitable restitution should

27  likewise be dismissed.

28

-32-

**10.  Plaintiff's Claims Under the FAL, UCL, and CLRA Should Be Dismissed Because Plaintiff Failed to Allege BABW Did Not, In Fact, Offer the Products For Sale At the Reference Prices During the Relevant Time Period.**

Section 17501 of the FAL states that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement[.]" Cal. Bus. & Prof. Code § 17501. Section 17500 of the FAL prohibits a party from making "untrue or misleading" statements in connection with the sale of goods or services. As relevant here, the CLRA prohibits a party from: (a) representing that goods have "characteristics" or "benefits" they do not have; (b) advertising goods "with the intent not to sell them as advertised"; and (c) "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(5), (9) , (13) . The UCL prohibits, as relevant, "unlawful . . . business act[s]" and "deceptive . . . advertising[.]" Cal. Bus. & Prof. Code § 17200.[5]

---

[5] Under the "unlawful" prong, a plaintiff must state a claim under a predicate law, such as the FAL or CLRA. *Hadley v. Kellog Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017). If a UCL claim under the "deceptive" prong is based on the same theory as a claim under the FAL, and the FAL claim fails, then the UCL claim under the "deceptive" prong fails as well. *See Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235, at *10 (C.D. Cal. Aug. 14, 2023). Plaintiff's claim under the "deceptive" prong mimics his claims under the FAL and CLRA, and thus fails. (Dkt. 1, *compare* ¶ 123 *with* ¶¶ 154, 165.)

1   Federal Rule of Civil Procedure 9(b) applies where, as here, a plaintiff

2   alleges that a defendant engaged "in a fraudulent pricing scheme in violation of

3   the FAL, UCL and CLRA." *Fisher v. Eddie Bauer LLC*, 2019 WL 9467922, at *3

4   (S.D. Cal. Oct. 18, 2019) ("*Fisher I*"). Rule 9(b) requires a plaintiff to "state with

5   particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). A

6   plaintiff thus must "identify the who, what, when, where, and how of the

7   misconduct charged, as well as what is false or misleading about the fraudulent

8   statement, and why it is false." *Fisher*, 2019 WL 9467922, at *3 (quoting *U.S. ex*

9   *rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

10  Further, in a deceptive pricing case, Rule 9(b) "requires a plaintiff to conduct a

11  pre-complaint investigation in sufficient depth to assume that the charge of fraud

12  is responsible and supported." *Fisher v. Eddie Bauer LLC*, 2020 WL 4218228, at

13  *3 (S.D. Cal. Feb. 3, 2020) ("*Fisher II*").

14  The gravamen of Plaintiff's CLRA, FAL, and UCL claims is that BABW

15  engaged in deceptive and misleading practices by using false reference prices. (*See*

16  Dkt. 1, *e.g.*, ¶ 123 (CLRA claim); ¶ 142 (FAL, Section 17501 claim); ¶ 154 (FAL,

17  Section 17500 claim); ¶¶ 164-65 (UCL claim).) But the pre-suit investigation

18  alleged by Plaintiff does not support such a broad claim: Plaintiff identifies only a

19  sampling of products from BABW's **website** that he alleges remained on sale for

20  an extended period of time. (*See id.* ¶¶ 5-6, 15, 39-50.) Specifically, Plaintiff's

21  Complaint contains no allegations regarding advertisements and sales at the

22  reference prices in BABW's brick-and-mortar retail stores. (*See id.*, *passim*.)

23  In this regard, *Fisher I* is instructive. There, the plaintiff alleged that the

24  defendant "engaged in a 'fraudulent price scheme' by putting false reference prices

25  on the price tags of 'almost all' of the merchandise at its outlet 'stores.'" 2019 WL

26  9467922, at *1. In support of his claims, the plaintiff attached to the complaint two

27  photographs showing a "small 50 percent off sign above a rack of shirts, as well

-34-

as a photograph of a $59.99 . . . price tag for one of the shirts." *Id*. The plaintiff alleged that his counsel had "cataloged the pricing practices" of the defendant at an outlet store "for several months" before the plaintiff made his purchases. *Id*. at *2. The plaintiff alleged that the merchandise was "never" sold "anywhere" at the reference prices on the price tags. *Id*. at *1. The Court dismissed the claim that the defendant engaged in a "fraudulent pricing scheme" with respect to "almost all" of the products sold at its outlet stores on grounds that the alleged pre-suit investigation was insufficient:

> Except for the single store from which he purchased the items, Fisher does not identify any of the Eddie Bauer 'stores' allegedly participating in the scheme. ***Nor does Fisher allege that he searched Eddie Bauer's website, other Eddie Bauer stores, Eddie Bauer paper catalogues, or any department store selling Eddie Bauer products***.

*Id*. at *5 (emphasis added).

Here, the extent of Plaintiff's pre-suit investigation is limited ***solely*** to BABW's website. (Dkt. 1, ¶¶ 5-6, 15, 39-50.) Plaintiff's failure to allege any facts regarding, for instance, the prices charged for the products in-store makes this allegation, and Plaintiff's entire theory, merely conclusory.[6] *See Lisner v. Sparc Grp.*, 2021 WL 6284158, at *6 (C.D. Cal. Dec. 29, 2021) (dismissing deceptive pricing claims based on inadequate pre-suit investigation); *Fisher*, 2019 WL 9467922, at *5 (allegation that defendant's products were "never" sold "anywhere" at the reference prices were "conclusory allegations, not facts");

---

[6] This infirmity is particularly acute with respect to Plaintiff's Section 17501 claim, which requires him to plausibly allege that the reference prices were not the ***prevailing market prices*** within the three months preceding the purchases.

BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND    Case No. 3:24-CV-02268-AGS-DEB
MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Seegert v. Luxottica Retail N. Am., Inc.*, 2018 WL 1214888, at *4 (S.D. Cal. Feb. 23, 2018) ("Simply alleging that the statement, "40% Off Lenses With Frame Purchase," is deceptive because the lenses were never sold at list or regular price falls short of Plaintiff's pleading burden."); *Dennis v. Ralph Lauren Corp.*, 2016 WL 7387356, at *4 (S.D. Cal. Dec. 20, 2016) (dismissing FAL, CLRA, and UCL claims where the plaintiff "d[id] not allege that Ralph Lauren girl's polo shirt was unavailable at the $74.99 price at other locations offering Ralph Lauren products, such as the 'Polo retail stores[s], high-end department stores, and related online stores' identified in the FAC"); *see also Sperling v. DSWC, Inc.*, 699 F. App'x 654, 655 (9th Cir. 2017) (affirming dismissal of putative class claims alleging price tags were false and deceptive where complaint lacked allegations detailing pre-suit investigation).

## IV.   CONCLUSION

For the foregoing reasons, this matter should be transferred to the Eastern District of Missouri or, in the alternative, dismissed in its entirety, with prejudice.

## CERTIFICATION OF MEET AND CONFER

Pursuant to Rule No. 5 of Judge Andrew G. Schopler's Civil Chambers Rules, the undersigned hereby certifies that counsel met and conferred over the issues raised in this filing, via videoconference, on March 24, 2025.

DATED: March 31, 2025

Ben Suter
**KEESAL, YOUNG & LOGAN**

Philip J. Mackey
    (*pro hac vice forthcoming*)
Michael L. Jente
    (*pro hac vice forthcoming*)
**LEWIS RICE LLC**

*Attorneys for Defendant*

-36-